# Winings v. Hearst.

*Evidence—Husband and wife—Party dead—Competency of wife—Decedent's estates—Claim for services—Act of May* 23, 1887.

In an action against an administrator to recover on an implied contract for services rendered to decedent, the wife of the plaintiff is not a competent witness for the purpose of showing a contract prior to the death of the decedent, and to rebut all presumption that the services were rendered gratuitously.

*Decedent's estate—Claim for services.*

The performance and receipt of services generally raises an implied promise by him who receives to compensate him who performs, but the implication may be rebutted. In order to establish such a contract, either express or implied, the evidence must be clear, distinct and convincing.

In an action against an administrator to recover for services rendered to the decedent where the evidence shows that while the parties were not related to each other, they resided together, and had many domestic interests in common, that certain necessary services were rendered up to

the time of decedent's death and that during her last illness they were peculiar and exceptional, a jury should be allowed to pass upon the part of the plaintiff's claim which relates to the proper services rendered, and the reasonable expenses incurred during the last illness of the decedent.

Argued Oct. 26, 1900. Appeal, No. 165, Oct. T., 1900, by plaintiff, from order of C. P. McKean County, Dec. T., 1897, No. 4, refusing to take off nonsuit in case of J. E. Winings v. William Hearst, Administrator of Rebecca Hearst. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit for services rendered decedent. Before MORRISON, J.

At the trial it appeared that the plaintiff, who was a laboring man with a wife and two children, rented from the decedent, Rebecca Hearst, a small house in which Mrs. Hearst reserved two rooms for her own use. Plaintiff claimed for board furnished to decedent, and for certain services and necessary expenses rendered and incurred before and during her last illness.

The plaintiff called Ida Winings, wife of plaintiff, as a witness.

Plaintiff's counsel offered to prove by the witness that she is the wife of J. E. Winings, and that about October 10, 1889, Rebecca Hearst, on the invitation of the witness, sat at the table of the plaintiff and ate her meal. That afterwards, without any invitation on the part of the witness or the plaintiff, Rebecca Hearst regularly came to the plaintiff's table and ate her meals; that about the same time Rebecca Hearst brought her clothing to the witness to be washed and ironed by the witness, and that the witness washed and ironed the same. That after this, regularly each week until she died, she brought her clothes to the witness, and the witness washed and ironed them; and that neither the plaintiff nor witness received any compensation from Rebecca Hearst for washing or ironing her clothes. That sometime in February or March, 1890, when the plaintiff was paying to Rebecca Hearst rent for the house, that the witness, in the presence of the plaintiff, said that the rent was too high, and that it was costing them too much to live; and that Rebecca Hearst said to the witness and plaintiff that the rent was not too high; that she expected to pay for her board.

316 WININGS *v.* HEARST.

Statement of Facts—Opinion of the Court. [17 Pa. Superior Ct.

This is offered for the purpose of showing a contract relation between the plaintiff and Rebecca Hearst, with reference to her board and washing, and care during the last sickness, and to rebut all presumption that the services were rendered gratuitously.

Objected to the witness testifying to any contract or thing prior to the death of Rebecca Hearst, she being incompetent, as being the wife of the plaintiff in this case.

The Court: Under the authority of the case of Bitner's Executor v. George S. Boone, 128 Pa. 567, we sustain the objection and exclude the evidence, this being a decision of the Supreme Court of Pennsylvania squarely upon the point, and we are not aware that it has ever been overruled.

Objection sustained, exception sealed for the plaintiff. [1]

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions. (4) Refusal to take off nonsuit.

*H. E. Shaffer*, of *Shaffer & Shaffer*, for appellant.—The wife of plaintiff was competent: Shirk v. Vanneman, 3 Yeates, 196; Lewis v. Manly, 2 Yeates, 200; Jackson v. Wright, 3 Whart. 605; Dickson v. McGraw Bros., 151 Pa. 98; Sutherland v. Ross, 140 Pa. 379; Horne & Co. v. Petty, 192 Pa. 32.

The question of the services rendered was for the jury: Smith v. Milligan, 43 Pa. 107; Harrington v. Hickman, 148 Pa. 401; Gerz v. Demarra, 162 Pa. 530; Reynolds v. Richards, 14 Pa. 207; Tanner v. Hughes, 53 Pa. 289.

*Neil C. MacEwen*, for appellee.—The wife was incompetent: Taylor v. Kelly, 80 Pa. 95; Bitner v. Boone, 128 Pa. 567.

The nonsuit was proper: Peter's App., 106 Pa. 340; Mueller's Est., 159 Pa. 590; Pollock v. Ray, 85 Pa. 428; Paul's App., 182 Pa. 349; Hartman's App., 3 Grant, 271.

Opinion by Orlady, J., July 25, 1901:

This action was brought against the administrator of Rebecca Hearst to recover on an implied contract for services rendered to the decedent and for feed etc., furnished to her stock. On

the trial the wife of the plaintiff was offered as a witness for the purpose of showing a contract prior to the death of Rebecca Hearst and to rebut all presumption that the services were rendered gratuitously. An objection being made by the defendant, her evidence was excluded. The plaintiff was himself incompetent, not only under the words and settled policy of the statute, but as a person " whose interest is adverse to the right of the deceased;" his wife was also incompetent for the same reason. " The identity of husband and wife is such that where one of them is incompetent to testify as a witness, the other is incompetent also. Bitner v. Boone, 128 Pa. 567. If the husband must be excluded on account of interest, so also must his wife be excluded on account of her unity of interest with him. Although each may not be said to have any direct interest during coverture, she has, nevertheless, an indirect interest derivative from her husband and so presently joined with his as at all periods in the history of the law placed her in the attitude of an interested person, in cases where her husband's rights come into controversy: " Sower v. Weaver, 78 Pa. 443; Sutherland v. Ross, 140 Pa. 379; s. c., 160 Pa. 31; Yost v. Mensch, 141 Pa. 73.

In Van Horne v. Clark, 126 Pa. 411, in an action of ejectment, the defendant, a married woman, was permitted to testify that she remained at home under a contract with her father, that if she would stay with him and her mother and take care of them he would pay her for her services, and that from said service she paid for the land in dispute, on the ground that she was not called to testify " against the decedent's title, but in support of it; or to speak with greater accuracy, to prove the consideration she paid for the land, neither party to the record was acting in a representative capacity." This was followed in Young v. Senft, 153 Pa. 352, and in Poundstone v. Jones, 187 Pa. 289.

In these cases the question was not only as to the competency of the wife as a witness but as to the effect to be given to her testimony. This court held in Guernsey v. Froude, 13 Pa. Superior Ct. 405, that under the act of May 23, 1887, when the wife was competent, her testimony was entitled to the same credit as that of any other witness, but that her credibility, like that of a father, child or friend, was for the jury alone.

The court entered a compulsory nonsuit for the reason that there was no proof of an express contract, and " that the presumptions that exist against such a claim have not been overcome by sufficient testimony to warrant the jury in finding an implied contract." Subsequently it refused to take off the judgment of nonsuit.

The evidence shows that while the parties were not related to each other, they resided together and had many domestic interests in common ; that certain necessary services were rendered up to the time of Mrs. Hearst's death, and that during the last illness of the deceased they were peculiar and exceptional. The presumption of payment, at least, as to those which might ordinarily arise in the case of a domestic servant, would not necessarily be applicable in such a case : Ranninger's Appeal, 118 Pa. 21 ; Rhodes's Appeal, 156 Pa. 337.

The performance and receipt of services generally raises an implied promise by him who receives to compensate him who performs, but the implication may be rebutted : Curry v. Curry, 114 Pa. 367 ; Griffith's Estate, 147 Pa. 274.

There was sufficient competent evidence from which the jury would be justified in inferring an implied promise to pay a reasonable amount for the services rendered and necessary expenses incurred during the last illness of Mrs. Hearst. The learned court was correct in the application of the law to the evidence adduced by the plaintiff in support of the greater part of his claim. In order to establish such a contract, either express or implied, the evidence must be clear and distinct and convincing. Such claims are always subjects of just suspicion, and our books are full of expressions of the necessity of strict requirement of proof and the firm control of juries in such cases : Carpenter v. Hays, 153 Pa. 432; Mueller's Estate, 159 Pa. 590 ; Hughes's Estate, 176 Pa. 387 ; Weaver's Estate, 182 Pa. 349 ; Miller's Estate, 188 Pa. 214; Savage's Appeal (Hayes's Estate).

A jury should be allowed to pass upon the part of the plaintiff's claim which related to the proper services rendered and the reasonable expenses incurred during the last illness of the decedent.

The fourth assignment of error is sustained, the judgment is reversed and a venire facias de novo awarded.